UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JEFFRY HAGEN, JR.,

     Applicant,

v.                                                        CASE NO. 8:16-cv-2191-T-23AEP

SECRETARY, Department of Corrections,

     Respondent.
_____/


## **ORDER**

     Hagen applies under 28 U.S.C. § 2254 for the writ of habeas corpus.  (Doc. 1) He challenges his convictions for four counts of sexual battery on a child less than twelve and a count of both lewd or lascivious exhibition before a child under sixteen and lewd and lascivious molestation of a child under twelve, for which six convictions Hagen is imprisoned for life.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 10)

     The child-victim ("J.D.") of the sexual abuse is the half-sister of the daughter Hagen fathered with the two girls' mother.  The respondent admits the application's timeliness (Response at 3) and correctly argues that some grounds are procedurally barred from federal review.  Hagen fails to prove his entitlement to relief under Section 2254.

# I.  BACKGROUND[1]

Hagen and J.D.'s mother (Ms. Thomas) have a child together; the child is the half-sister of J.D.  In March, 2011, nine-year-old J.D. spontaneously disclosed to her mother that Hagen had sexually molested her in several different ways over an extended period.  Thomas immediately contacted both the Florida Child Abuse Hotline and her local police department.  Concurrent criminal and Department of Children and Families ("DCF") investigations began the following day in Sarasota and Manatee counties.  As part of those investigations, a case coordinator for the Sarasota Child Protection Center conducted a forensic interview with J.D, and during that interview J.D. again disclosed that Hagen had sexually abused her. Detective McGath of the Sarasota County Sheriff's Office was assigned to investigate the criminal allegation of sexual abuse.  Detective McGath was both present at J.D.'s forensic interview and in contact with DCF investigators.  Before meeting Hagen on March 16, 2011, Detective McGath knew that Hagen had a 2002 Michigan juvenile conviction for child sexual abuse of his then-seven-year-old brother, D.R.

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that sub-parts B–E of ground one are procedurally barred from federal review, primarily because Hagen failed to fully exhaust his available state court remedies.  An applicant must present each claim to a state court

---

[1]  This summary of the facts derives from the trial court's order denying Hagen's pre-trial motion to suppress. (Respondent's Exhibit 17 at 2–3)

before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

The respondent argues that Hagen never identified sub-parts B, C, and E as a federal issue in his direct appeal.  Instead, the respondent argues, Hagen presented sub-parts B, C, and E to the appellate court as an abuse of discretion under state law and not as a violation of a federally protected right.  Similarly, the respondent argues that Hagen presented sub-part D to the trial court as an abuse of discretion under state law and not as a violation of a federally protected right.

Each sub-part is discussed more thoroughly below, but generally the failure to alert the state court about the alleged violation a federally protected right fails to meet the exhaustion requirement.  As *Reese* explains, 541 U.S. at 32, an applicant

must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). An applicant must present to the state court the same claim presented to the federal court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

In reply Hagen argues that exhaustion is complete because in his appellate brief he cited state cases that address the same federal claims. Hagen cites *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015), which recognizes the language in *Reese* that the exhaustion requirement is met "by citing in conjunction

with the claim . . . a [state] case deciding such a claim on federal grounds . . . ."

541 U.S. at 32.

## A.  Ground One, Sub-Part B:

Hagen alleges that the trial court erred in allowing the prosecutor to introduce the child hearsay statements of both J.D. (the child-victim) and D.R. (Hagen's younger brother).  Unquestionably, Hagen presented this hearsay claim on appeal as only a state law evidentiary issue, and the two state cases that he cited in his opening brief are also limited to a state law evidentiary issue.  (Respondent's Exhibit 7 at 20–22)  As a consequence, Hagen failed to "fairly present" sub-part B to the state court as a federal claim.  Sub-part B of ground one is unexhausted.

## B.  Ground One, Sub-Part C:

Hagen alleges that the trial court erred in allowing the prosecution to introduce his prior criminal acts, specifically, his juvenile conviction for child sexual abuse of his younger brother.  Hagen contends that the "probative value of the prior incident was heavily outweighed by unfair prejudice . . . ."  (Doc. 1 at 5)  Unquestionably, Hagen presented this claim on appeal as only a state law evidentiary issue, and, as with sub-part B, the two state cases that he cited in his opening brief are also limited to a state law evidentiary issue.  (Respondent's Exhibit 7 at 22–26)[2]  Contrary to his apparent belief, the similarity of Florida's

---

[2]  Exhaustion is not complete even though *Cann v. State*, 958 So. 2d 545 (4th DCA 2007), which Hagen cited in his opening brief, discusses *Maryland v. Craig*, 497 U.S. 836 (1990), and the right to confront one's accuser under the Confrontation Clause. However, that discussion in *Cann* is both for a different issue and not in the part of the opinion that Hagen cites. Hagen asserts a Confrontation Clause issue in neither the state proceedings nor this federal action.

Evidentiary Code and the Federal Rules of Evidence is immaterial to Hagen's fulfilling the exhaustion requirement. As a consequence, Hagen failed to "fairly present" sub-part C to the state court as a federal claim. Sub-part C of ground one is unexhausted.

## C. Ground One, Sub-Part D:

Hagen alleges that, despite trial counsel's objection, the trial court erred in allowing the prosecutor to file a second amended information on the morning of trial. Hagen's opening argument on appeal was that "[a] delay by the state prior to the filing of an information can so adversely affect a defendant's right to prepare a defense that it will deny him the fourteenth amendment's guarantee of due process." (Respondent's Exhibit 7 at 26–27) The brief cites *United States v. Lovasco*, 431 U.S. 783, 796 (1977), which holds that, in delaying the return of a charging instrument, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Sub-part D of ground one is exhausted.[3]

---

[3] The respondent argues (1) that, because the trial transcript shows that trial counsel failed to object on federal grounds, the un-preserved federal claim was barred from review on appeal and (2) that this federal district court should — because the affirmance was in a *per curiam* decision without a written opinion — presume that the state appellate court applied the state's procedural default rules. Although that presumption is generally a correct statement of federalism, on appeal the respondent addressed the merits of the claim and never alerted the appellate court that the issue was unpreserved and procedurally barred. *See, e.g., Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) ("We cannot conclude that the Florida Supreme Court's summary denial of Zeigler's 1994 habeas petition was a decision on the merits. In responding to Zeigler's 1994 habeas petition, the State's only argument in response to Zeigler's claims was that the claims were procedurally defaulted."), *cert. denied*, 543 U.S. 842 (2004); *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir.) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."),

(continued…)

### D.  Ground One, Sub-Part E:

Hagen alleges that the cumulative effect of the trial court's errors asserted in the previous sub-parts "denied [him] a fair trial and equal protection of the law." (Doc. 1 at 5)  The respondent argues that Hagen failed to exhaust this claim because "he did not present the claim as a federal constitutional claim" on direct appeal. (Doc. 10 at 27)  On appeal, Hagen's opening statement about the standard of review quotes at length *State v. DeGuilio*, 491 So. 2d 1129, 1137, 1139 (Fla. 1986), specifically, the adoption of the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967).  Sub-part E of ground one is exhausted.

### E.  Conclusion:

As determined above, sub-parts B and C of ground one are unexhausted.  The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").  *See also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong'

---

*cert. denie*d, 490 U.S. 1071 (1989); *Nichols v. Wainwright*, 783 F.2d 1540, 1542 (11th Cir. 1986) ("[T]his court may presume, in the absence of any evidence to the contrary, tha[t] an established default rule which was briefed to a state court was applied by that court when it affirmed a conviction without opinion.").

and just treat those claims now barred by state law as no basis for federal habeas relief.").

Because each is unexhausted, sub-parts B and C of ground one are procedurally defaulted and, as a consequence, each is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *Coleman v. Thompson*, 501 U.S. 72, 29–30 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (emphasis original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Hagen must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Hagen fails to establish either cause and prejudice or a fundamental miscarriage of justice. Therefore, sub-parts B and C of ground one are both

procedurally barred from federal review and not entitled to a determination on the merits.  Sub-parts A (which the respondent admits is exhausted) and both sub-parts D and E (which as determined above are exhausted) of ground one and ground two are entitled to a review on the merits.

## III.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the

state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not

the correctness *per se*, of the state court decision that we are to decide.").  The phrase

"clearly established Federal law" encompasses only the holdings of the United States

Supreme Court "as of the time of the relevant state-court decision."  *Williams v.*

*Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. at 694.

A federal court must afford due deference to a state court's decision.  "AEDPA

prevents defendants — and federal courts — from using federal habeas corpus review

as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*,

559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This

is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the

doubt'. . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a

reasoned opinion, a federal habeas court reviews the specific reasons as stated in the

opinion and defers to those reasons if they are reasonable.  *Wilson v. Sellers*, 138 S. Ct.

1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons

given by the state court and defers to those reasons if they are reasonable.").  When

the relevant state-court decision is not accompanied with reasons for the decision,

the federal court "should 'look through' the unexplained decision to the last related

state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.  The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Hagen's convictions and sentence.  (Respondent's Exhibit 9) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Hagen's subsequent Rule 3.850 motion for post-conviction relief.  (Respondent's Exhibit 13)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254, *reh'g and reh'g en banc denied*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Hagen bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). Both the state court's rejection of Hagen's direct appeal claims, which was based on the trial court's pre-trial order denying Hagen's motion to suppress, and the post-conviction court's denial of Hagen's claims of ineffective assistance of counsel warrant deference in this case. (Respondent's Exhibits 17 and 11, respectively)

## IV.  DIRECT APPEAL CLAIMS

### A.  Ground One, Sub-Part A:

Hagen alleges that the trial court erred in denying his pre-trial motion to suppress both his pre-*Miranda* and post-*Miranda* statements because (1) he was not

advised that he was the target of the investigation and (2) that he was "in custody"

because he felt that he was not free to leave.  The respondent broadly interprets this

ground to the extent that Hagen exhausted his claims in the state courts (Response

at 6, Doc. 13):

> On direct appeal, Hagen argued that all of his statements, both
> those made before *Miranda* warnings were given and those
> made after, should have been excluded because he was in
> custody at the time of his pre-*Miranda* statements and his post-
> *Miranda* statements were obtained by using a 'question-first'
> tactic to obtain a confession.

The trial court conducted a lengthy pre-trial suppression hearing and issued a

written order of findings of fact and conclusions of law.  (Respondent's Exhibit 17)

As stated above, because the state appellate court affirmed the convictions without a

written opinion, a federal court "should 'look through' the unexplained decision to

the last related state-court decision that does provide a relevant rationale [and]

presume that the unexplained decision adopted the same reasoning."  *Wilson*,

138 S. Ct. at 1192.  As a consequence, this district court must "look through" to the

trial court's written order denying the motion to suppress.

The trial court described Hagen's claim as follows (Respondent's Exhibit 7

at 6):

> 10. The Defense seeks to suppress the Defendant's March 16,
> 2011, statement to law enforcement for several reasons
> including (1) the Defendant was subject to custodial
> interrogation prior to the reading of *Miranda*; (2) law
> enforcement used the "question first" tactic to obtain an
> inadmissible confession; and (3) the Defendant's confession
> was the product of implied promises of leniency and improper
> influence.

The trial court explained that, under *Ramirez v. State*, 739 So. 2d 568, 574, (Fla. 1999), four factors govern the findings of fact for determining whether a person is "in custody" (Respondent's Exhibit 17 at 7):

> In Florida, a court must consider the following four factors: (1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning.

## 1.  Pre-*Miranda* Statement:

The trial court's detailed order sequentially addresses the above four factors in the following findings of fact (Respondent's Exhibit 17 at 8–9):

> 14. As to the manner in which the police summoned the defendant for questioning, the Court finds that law enforcement responded to the local DCF office in response to the Defendant going there on his own to find out information about a potential DCF investigation involving his biological daughter with Thomas. There is no evidence to suggest that law enforcement summoned or otherwise had the Defendant for questioning either directly or by subterfuge.

> 15. As to the purpose, place, and manner of the interrogation, the Court finds that Detective McGath went to the local DCF office because the Defendant appeared there asking questions that could affect her criminal investigation. After meeting the Defendant, McGath took advantage of the opportunity to interview the Defendant to determine whether he had sexually abused J.D. or any other child. The Defendant was unaware of McGath's focus until she explicitly confronted him and read him *Miranda*. The entire interview took place in a furnished conference room at the local DCF office. No portion of the interview was conducted in any type of secure, law enforcement facility. In addition to the two detectives, a DCF investigator was also present. The detectives were dressed in plain clothes and wore waist badges. There was no evidence that either detective carried or displayed a firearm or other weapon. The interview took place at a table during which McGath primarily questioned the Defendant due to her prior

knowledge of the case. The early afternoon interview was relatively short.

16. As to the extent to which the suspect is confronted with evidence of his guilt, the Court finds that the Defendant was not directly confronted with evidence of his guilt until Detective McGath read him his *Miranda* Rights and specifically accused him of sexually molesting J.D.

17. As to whether the suspect was informed that he was free to leave the place of questioning, the Court finds that during the initial portion of the pre-*Miranda* interview, there is no evidence to suggest that anyone told the Defendant that he was free to leave. The Court cannot ignore the Defendant's own testimony however about his perceived need to stay and talk — he testified at the hearing on this motion [to suppress] that "I thought if I left it would look bad for me in terms of me trying to get custody again." From this statement, as concerned as the Defendant may have been about his sexual abuse of J.D. being discovered, he was much more concerned about what could be going on with Thomas and their biological daughter and how that would affect his opportunity to be with his daughter. The Defendant made a deliberate decision in his own mind to stay and speak with the detectives.

Based on the above findings, the trial court concluded as follows

(Respondent's Exhibit 17 at 9):

18. Under all of these circumstances, the Court finds that during the pre-*Miranda* portion of the interview, a reasonable person in the Defendant's position would have felt that he was free to leave or end the interview with the detectives and the DCF investigator. As a result, the pre-*Miranda* portion of the interview was not custodial.

Because the state court recognized that *Miranda* governs, Hagen cannot show

that the state court's decision is contrary to a controlling Supreme Court decision.

Instead, Hagen must prove that the state court's decision either is an unreasonable

application of controlling Supreme Court precedent or is based on an unreasonable

determination of the facts.  In his reply Hagen asserts a slightly different

interpretation of the facts but never attempts to show that the trial court's findings of fact are unreasonable, much less unreasonable by clear and convincing evidence as required under Section 2254(e)(1) — "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  As a consequence, the state court's findings of fact govern this district court's review of Hagen's claim.

In his reply Hagen cites three cases as supporting his entitlement to relief, but none of the cases shows that the state appellate court's ruling violates the "unreasonable application" standard.  Instead of supporting Hagen's position, *Stansbury v. California*, 511 U.S. 318, 322–23 (1994), and *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984), support the state court's ruling.  The latter explains that, in determining whether a person is "in custody" to trigger the need for *Miranda* warnings, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."  *Stansbury*, 511 U.S. at 322–23, addresses determining whether a person was "in custody" when questioned.

> In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.
>
> Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.

Consistent with *Berkemer's* "only relevant inquiry" and *Stansbury's* focus on "the objective circumstances of the interrogation," the trial court concluded that "a reasonable person in [Hagen]'s position would have felt that he was free to leave or end the interview . . . ."

Lastly, Hagen cites *Illinois v. Perkins*, 496 U.S. 292 (1990), for the proposition that "*Miranda's* procedural protections were adopted precisely in order to dispel the compulsion inherent in custodial surroundings." (Doc. 19 at 4–5)  Although a correct proposition of law, *Perkins* is inapplicable based on both the trial court's controlling findings about the surroundings where the interview occurred and the conclusion that "the pre-*Miranda* portion of the Hagen's interview was not custodial."  The appellate court's affirmance of Hagen's convictions is not an unreasonable application of controlling Supreme Court precedent.  As such, Hagen fails to meet his burden under Section 2254(d).

### 2.  Post-*Miranda* Statements:

The trial court's detailed order states, in pertinent part, the following findings of fact (Respondent's Exhibit 17 at 9):

> 19. The Court further finds that once Detective McGath decided to question the Defendant point blank about whether he sexually abused J.D., she read him his *Miranda* Rights and also had him sign a written waiver. There is no evidence to indicate that the Defendant did not understand his rights or that he was pressured or coerced in any way to talk to the detectives and the DCF investigator. There is no evidence to suggest that the Defendant was under the influence of any intoxicating substance or mentally or physically impaired in any way. After being read *Miranda* and confronted directly with specific allegations, the Defendant voluntarily spoke with detectives. At

first, he tacitly admitted that he had abused J.D.; he eventually described some of his acts of sexual abuse in detail.

In addressing Hagen's claim that the officers subjected him to the "question first" tactic, the trial court recognized the correct governing precedent (Respondent's Exhibit 17 at 10):

> In *Missouri v. Seibert*, 542 U.S. 600 (2004), the Supreme Court condemned the "question first" technique because it essentially renders subsequent *Miranda* warnings ineffective. When considering this issue a court must consider the following factors:
>
> > The completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.
>
> *Seibert*, 542 U.S. at 615.

The trial court thoroughly addressed each of *Seibert's* five factors and concluded that the police did not employ a "question first" tactic.  In pertinent part, the court found the following for the first factor (Respondent's Exhibit 17 at 10–11):

> There is no evidence — including any testimony by the Defendant himself — that either the relatively innocuous or potentially problematic pre-*Miranda* questions led him to disregard the *Miranda* warnings or confess under duress. The Court further finds that Detective McGath did not confront the Defendant with any questions directly related to whether he had sexually abused J.D. until after he voluntarily, knowingly and intelligently [waived] his *Miranda* rights.

For the remaining factors, the trial court found (1) that there was "essentially no overlap between the pre-*Miranda* and post-*Miranda* questions, (2) "that the setting remained the same for the entire interview and the only 'gap' in between the timing

of the [two portions] of the interview was the reading of *Miranda* itself and the Defendant's waiver thereof," (3) "that the police personnel remained the same for the duration of the entire interview," and (4) that "there was a sharp and decided contrast between the tone and focus of the first round of pre-*Miranda* questions and the second round of post-*Miranda* questions."  (Respondent's Exhibit 17 at 10–11)  The trial court concluded that Hagen was entitled to no relief under *Siebert*.

In his reply Hagen reviews the *Seibert* factors and disagrees with the state court's ruling.  His disagreement is insufficient to meet his burden.  *Woodall*, 572 U.S. at 427 ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*).  Hagen cites no precedent to meet his burden of showing that the state court's decision is an unreasonable application of controlling Supreme Court precedent.  Hagen is not entitled to relief under sub-part A of ground one.

## B.  Ground One, Sub-Part D:

Hagen alleges that, despite counsel's objection, the trial court erred in allowing the prosecution to file a second amended information.  A five-count information charged Hagen with four counts of sexual battery and a count of lewd and lascivious exhibition.  J.D. was the child-victim in each count.  A few days before trial the prosecution noticed a second amended information that added a sixth count, lewd and lascivious molestation of J.D.  On the morning of trial defense counsel objected

to permitting the amendment, claiming that he was prejudiced by the late filing. After hearing the prosecutor's substantial explanation for lack of prejudice (Respondent's Exhibit 2 at 10–12), the trial court allowed the second amended information because "the Court does not believe that prejudice exists at this time" (Respondent's Exhibit 2 at 13), apparently in-part because, as the prosecutor had explained, the new charge (1) was not based upon a fact not previously disclosed to the defense and (2) was a continuation of Hagen's abuse of J.D.

Under *Lovasco*, which Hagen cites in his opening brief on direct appeal, a defendant must both allege and prove actual prejudice. *Scott v. State*, 581 So. 2d 887, 891 (Fla. 1991), cites *Lavasco* as assigning to "the accused . . . the burden of proving the prejudice and, if the threshold requirement of proof of actual prejudice is not met, the inquiry ends there." Moreover, proof of just "some" prejudice is insufficient. "[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 976. Hagen identifies no actual prejudice.

Hagen cites no case to meet his burden of showing that the state court's decision is an unreasonable application of controlling Supreme Court precedent. Hagen is not entitled to relief under sub-part D of ground one.

## C. Ground One, Sub-Part E:

Hagen alleges that the cumulative effect of the trial court's errors asserted in the previous sub-parts denied him of his rights both to a fair trial and to equal protection of the law. Hagen can prove cumulative error only by showing two or

more errors.  *See Lucas v. Warden, Georgia Diagnostic & Classification Prison*, 771 F.3d 785, 802 (11th Cir. 2014) ("We are equally unpersuaded that the cumulative effect from Lucas's *Strickland* and *Brady* claims entitles him to relief."), *cert. denied sub nom Lucas v. Humphrey*, 136 S. Ct. 135 (2015); *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the applicant] received a fair trial as is [his] due under our Constitution."); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."), *cert. denied*, 469 U.S. 1158 (1985).

Because each individual claim of error lacks merit, Hagen shows no cumulative prejudicial effect.  *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.").

Hagen cites no case to meet his burden of showing that the state court's decision is an unreasonable application of controlling Supreme Court precedent. Hagen is not entitled to relief under sub-part E of ground one.  And as determined above, Hagen is entitled to no relief on a direct appeal claim alleged in ground one.

# V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Hagen claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice.

*See Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective

assistance claim . . . to address both components of the inquiry if the defendant

makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying

*Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hagen must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691.  To meet this burden, Hagen must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Hagen cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers'

> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220 21 (11th Cir. 1992).  *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's

investigation is discussed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir.

2014), *cert. denied sub nom. Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d
> at 1317. "[C]ounsel has a duty to make reasonable
> investigations or make a reasonable decision that makes
> particular investigations unnecessary." *Strickland*, 466 U.S. at
> 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not
> always investigate before pursuing or not pursuing a line of
> defense. Investigation (even a nonexhaustive, preliminary
> investigation) is not required for counsel reasonably to decline
> to investigate a line of defense thoroughly." *Chandler*, 218 F.3d
> at 1318. "In assessing the reasonableness of an attorney's
> investigation . . . a court must consider not only the quantum of
> evidence already known to counsel, but also whether the
> known evidence would lead a reasonable attorney to investigate
> further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty

to raise a frivolous claim).

Under Section 2254(d) Hagen must prove that the state court's decision

"(1) [was] contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States or (2) [was]

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105.  *See also Pinholster*, 563 U.S. 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 571 U.S. 874 (2013).

In summarily denying Hagen's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 11 at 2)  Because the state court rejected the claims based on *Strickland*, Hagen cannot meet the "contrary to" test in Section 2254(d)(1). Hagen instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an

independent assessment of whether counsel's actions were reasonable.  *Putnam v.*

*Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

The presumption of correctness and the highly deferential standard of review

requires that the analysis of each claim begin with the state court's analysis.

## VI.  POST-CONVICTION CLAIMS

In ground two Hagen alleges three claims of ineffective assistance.  Each claim

alleges that counsel was ineffective at the pre-trial motion to suppress, which motion

was the subject of ground one.  The post-conviction court summarily denied the

three claims of ineffective assistance of counsel, which decision was affirmed on

appeal without a written opinion.  As explained earlier, *Wilson* requires this court to

"look through" the appellate court's silent affirmance to the post-conviction count's

reasoned opinion.

## A.  Ground Two, Sub-Part A:

Hagen alleges that counsel was ineffective for asserting the wrong argument

during the suppression hearing.  Hagen contends that counsel should have argued

that Hagen was misled about his true position during the interrogation, specifically,

that he was unaware that he was the target of the investigation.  The post-conviction

court denied this claim as follows (Respondent's Exhibit 11 at 3–4) (brackets

original) (references to attachments omitted):

> Defendant's first argument that counsel did not argue that he
> was misled as to his true position during the interrogation,
> instead emphasizing that he did not feel free to leave, is without
> merit. In the "Memorandum of Law in Support of Defendant's

Motion to Suppress Statement Made on March 16, 2011,"
counsel argued:

> In this case, the detective improperly influenced
> the defendant to make a statement by misleading
> him into believing that they were present to
> conduct a DCF-related investigation into his
> child's well-being and [Ms.] Thomas's fitness as a
> parent. The detective also made an implied threat
> to defendant: that if he did not speak to her about
> his sexual conduct, it may jeopardize his ability
> to see his daughter. Further, the detective
> repeatedly told defendant that he needed help
> and even offered to refer him to [a] counselor.
> She also suggested that there was no point to
> deny what happened. The defendant's
> admissions were the fruit of this deceit, improper
> influence, and implied threats and promises.
> Therefore the admission should be suppressed.

This argument was also presented at the suppression hearing.
As a prerequisite to this argument, counsel had to establish that
Defendant was in custody because "*Miranda* warnings are
required only when an individual is undergoing custodial
interrogation." *Hunter v. State*, 8 So. 3d 1052, 1063 (Fla. 2008),
*cert. denied*, ___ U.S. ___, 129 S. Ct. 2005, 173 L. Ed. 2d 1101
(2009). Because counsel adequately presented the argument at
issue, he cannot be found ineffective.

The post-conviction court correctly found that the record refutes Hagen's

claim — that counsel erred by not arguing to suppress his statements because he was

"misled" about the true nature of the questioning — because trial counsel presented

that claim by arguing that the police "improperly influenced [him] to make a

statement by misleading him into believing that" the interview was unrelated to his

abuse of J.D.  (Respondent's Exhibit 15 "Motion to Suppress Statement" at 3 and

Exhibit 11 Attachment 3 "Memorandum of Law in Support of Defendant's Motion

to Suppress" at 4)  The post-conviction court correctly determined that Hagen failed

to show deficient performance as required under *Strickland*.  Hagen fails to show that the appellate court's affirmance was an unreasonable application of *Strickland* in determining that trial counsel's performance was not deficient.  Hagen is not entitled to relief under sub-part A of ground two.

### B.  Ground Two, Sub-Part B:

Hagen alleges that counsel was ineffective for not calling Ms. Thomas to testify at the suppression hearing.  In his reply Hagen contends that Ms. Thomas "could testify to the fact that Law Enforcement Officer(s) (LEO) and the Child Protection Team (CPT) Investigator directed her to make the call, luring Petitioner to the DCF office under false pretences [*sic*], and that the call was made in the presence of these LEO(s) and the CPT investigator . . . ."  (Doc. 19 at 10)  The post-conviction court denied this claim as follows (Respondent's Exhibit 11 at 4) (references to attachments omitted):

> Defendant's next argument that Thomas should have testified at the suppression hearing is without merit. There was detailed testimony regarding Thomas's phone call to Defendant and his eventual arrival at the Child Protection Center. In its "Order Denying Defendant's Motion to Suppress 3-16-2011 Statements," the Court summarized Defendant's testimony:
>
> > During the interview, the Defendant initially said that he received a disturbing voice mail from a Manatee County investigator who wanted to interview him. The Defendant said that he also received a voice mail from Thomas who said that she thought she was in trouble and needed to speak to the Defendant. (Thomas's voice mail was the unsuccessful controlled call.) After the Defendant was unable to reach the investigator, he first drove to the sheriff's office and then to the Sarasota DCF office to find out what was

> going on because he had not seen his daughter in over a month.

The Court concluded that:

> As to the manner in which the police summoned the defendant for questioning, the Court finds that law enforcement responded to the local DCF office in response to the Defendant going there on his own to find out information about a potential DCF investigation involving his biological daughter with Thomas. There is no evidence to suggest that law enforcement summoned or otherwise had the Defendant for questioning either directly or by subterfuge.
>
> As to the purpose, place, and manner of the interrogation, the Court finds that Detective McGath went to the local DCF office because the Defendant appeared there asking questions that could affect her criminal investigation. After meeting the Defendant, McGath took advantage of the opportunity to interview the Defendant to determine whether he had sexually abused J.D. or any other child. The Defendant was unaware of McGath's focus until she explicitly confronted him and read him *Miranda*.

Thomas's testimony would have been cumulative to Defendant's, and there is no reasonable probability the outcome of the suppression hearing would have been different had she testified. Counsel cannot be found ineffective for failing to present cumulative evidence. *See Darling v. State*, 966 So. 2d 366, 377 (Fla. 2007) ("[T]his Court has held that even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence.).

The post-conviction court determined that, because Ms. Thomas's testimony would have been cumulative, trial counsel's performance was neither deficient nor prejudicial. Deciding which witness to present "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." W*aters v. Thomas*,

- 30 -

46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).  *See Dingle v. Sec'y, Dep't of Corr.*,

480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [not to call a

certain witness] appears to have been unwise in retrospect, the decision will be held

to have been ineffective assistance only if it was so patently unreasonable that no

competent attorney would have chosen it.") (internal quotation omitted); *Blanco v.*

*Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses

to call is an aspect of trial tactics that is normally entrusted to counsel."); *McDonald v.*

*Sec'y, Dep't of Corr.*, 578 F. App'x 921, 925 (11th Cir. 2014) (quoting *Blanco*).

The post-conviction court correctly determined that Hagen failed to meet his

burden of showing both deficient performance and resulting prejudice as required

under *Strickland*.  Hagen fails to show that the appellate court's affirmance was an

unreasonable application of *Strickland*.  Hagen is not entitled to relief under

sub-part B of ground two.

## C.  Ground Two, Sub-Part C:

Hagen alleges that counsel was ineffective for not preparing him to testify at

the suppression hearing.  The post-conviction court denied this claim as follows

(Respondent's Exhibit 11 at 5) (references to attachments omitted):

> Defendant's final argument that he was ill-prepared to testify at
> the suppression hearing is without merit. As set forth above,
> there was detailed testimony regarding Thomas's phone call to
> Defendant and his eventual arrival at the Child Protection
> Center. The Court summarized and relied on this testimony in
> its "Order Denying Defendant's Motion to Suppress 3-16-2011
> Statements." Additionally, as previously explained, counsel
> had to establish that Defendant was in custody as a prerequisite
> to the argument for suppression because "*Miranda* warnings are
> required only when an individual is undergoing custodial

> interrogation." *Hunter*, 8 So. 3d at 1063. There is no reasonable probability the outcome of the suppression hearing would have been different had Defendant emphasized his testimony regarding his belief that he was at the Child Protection Center regarding a custody issue concerning Thomas and her daughter. Counsel cannot be found ineffective.

The post-conviction court rejected this claim based on Hagen 's failure to prove prejudice — "[t]here is no reasonable probability the outcome of the suppression hearing would have been different . . . ." Although he disagrees with that assessment — "Petitioner asserts that[,] . . . had trial counsel prepared Petitioner for testifying[,] there is a reasonable probability that the trial court would have suppressed the statements" (Doc. 19 at 10) — Hagen presents no basis for concluding that the appellate court's affirmance of denial of relief is an unreasonable application of *Strickland*. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d at 1244, n.17. Hagen is not entitled to relief under sub-part C of ground two.

## VI.  CONCLUSION

Hagen fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose

claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Hagen's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Hagen and close this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Hagen is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Hagen must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Hagen is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Hagen must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on May 13, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE